

**SO ORDERED,**

**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THOMAS L. WINDHAM, MD and | ) | Case No.:  14-11544-JDW |
| LINDA T. WINDHAM, | ) | |
| | ) | |
| Debtors. | ) | Chapter:  11 |
| | ) | |

## ORDER ON CROSS-COLLATERALIZATION

This case originally came before the Court on the *Motion for Relief from Stay* (the "Motion")(Dkt. # 685) filed by Renasant Bank, successor-in-interest to Merchants & Farmers Bank (interchangeably referred to hereafter as the "Bank"), and the *Response* (Dkt. # 693) filed by Thomas and Linda Windham (the "Debtors"). The Court heard the Motion on January 4, 2017, and denied it in open court. During the hearing, ancillary issues were presented

1

concerning whether three separate loans are secured by the Debtors' homestead pursuant to a future advance clause in a deed of trust. Specifically, there were unresolved issues related to cross-collateralization and the Debtors' homestead rights. While the Motion has been denied, these issues impact numerous aspects of the case, including secured claims allowance, plan formulation, and a potential sale of the property. The parties agreed to waive the requirement or the need for an adversary proceeding under Rule 7001 of the Federal Rules of Bankruptcy Procedure and presented evidence on these issues. The Court entered an order setting a briefing schedule (Dkt. # 305), and the parties briefed the cross-collateralization issue (Dkt. # 722, 732). The Court has reviewed the briefs, the Motion and the Response, and has considered the documents received into evidence and the testimony at the hearing, and has analyzed the applicable law. For the reasons set forth herein, the Court finds and concludes that the three debts at issue are each secured by the Debtors' homestead by virtue of the future advance clause in the deed of trust.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b), the United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc Dated August 6, 1984. This is a core proceeding arising under Title

11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A), (B), (G), (K) and (O).

## II.   FACTS

On October 31, 2006, the Debtors each signed a deed of trust in favor of the Bank encumbering their home (the "2006 Deed of Trust"), owned solely by Mrs. Windham and located at 1003 South Lamar Boulevard in Oxford, Mississippi (the "Homestead").  The purpose of the 2006 Deed of Trust was to secure repayment of a loan made by the Bank to Dr. Windham in the principal amount of $150,527.00.  The issue before the Court is whether the 2006 Deed of Trust also secures two subsequent loans guaranteed by Dr. Windham, but not Mrs. Windham, pursuant to a future advance clause in the 2006 Deed of Trust.  That clause provides:

> 4. SECURED DEBT AND FUTURE ADVANCES. The term "Secured Debt" is defined as follows:
>
> \*     \*     \*
>
> B. All future advances from Lender [defined as the Bank]  to Grantor [defined as the Debtors] or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument whether or not such future advances or future obligations are incurred for any purpose that was related or unrelated to the purpose of the debt. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantors, or any one or more Grantors and others.

3

(the "Future Advance Clause").

The two loans in question are: (1) a loan to North Mississippi Spine Center, Inc., evidenced by a promissory note dated October 22, 2008, and a May 6, 2013, renewal of that loan (referenced as the "Third Note" in the Motion); and (2) a loan to Mid-South Business Associates, LLC, evidenced by a promissory note dated October 31, 2012, renewing and refinancing a prior loan (referenced as the "First Renewal Note" in the Motion). Both loans were guaranteed by Dr. Windham.[1]

### III. DISCUSSION

State law determines the nature and extent of property rights in a bankruptcy context. *Butner v. U.S.*, 440 U.S. 48, 54 (1979); *Mutual Benefit Life Ins. Co. v. Pinetree, Ltd. (In re Pinetree, Ltd.),* 876 F.2d 34, 36 (5th Cir. 1989). It is well-settled that both dragnet and future advance clauses are valid and enforceable in Mississippi. *Shutze v. Credithrift of America, Inc.*, 607 So.2d 55, 58-59 (Miss. 1992)(noting that the court has "repeatedly ruled, incident to a secured transaction, the debtor and secured party may contract that the lien or security interest created thereby shall secure other and

---

[1] Dr. Windham guaranteed debts owed by Mid-South Business Associates, LLC, to the Bank, by executing a continuing commercial guaranty dated January 31, 2012. Dr. Windham guaranteed debts owed by North Mississippi Spine Center, Inc., to the Bank and its predecessor in interest by executing continuing guaranties dated August 18, 2011, and November 30, 2009. These guaranties were admitted into evidence at the hearing on the Motion as Movant's Collective Exhibit 6.

4

future debts which the debtor may come to owe the secured party.").[2] "Such clauses are treated like any other provision in a contract and will be enforced at law subject only to conventional contract defenses." *Id.*

### A. Enforceability of Dragnet Clauses Regarding Antecedent Debts

The Debtors principally rely on another Mississippi Supreme Court case for their contention that the Future Advance Clause is ineffective to secure the two loans at issue in this case: *Merchants National Bank v. Stewart,* 608 So.2d 1120 (Miss. 1992). Debtors assert that *Stewart* established certain circumstances under which a future advance clause will not be enforced, and that those circumstances apply to the subsequent obligations at issue here.

In *Stewart,* the Mississippi Supreme Court addressed the question of whether an antecedent debt was covered by a clause in an agreement pledging property as security for a stated obligation as well as "any and all other indebtedness . . . created at any time before you shall have received notice from me terminating this [Agreement]." *Stewart,* 608 So.2d at 1125 n.4. The issue was whether the term "all other indebtedness" included an antecedent debt. *Id.* at 1125.

---

[2] A "future advance clause" applies only to future debts, and is simply one type of "dragnet clause," which, depending on its language, can apply to both antecedent and future debts. *Schutze,* 607 So.2d at 59. In Mississippi, "[a]ll clauses are enforced by reference to their language and law and not their label," thus, many courts use the terms interchangeably. *Id.*

5

The *Stewart* court discussed four factors relevant to its decision: (1) the fact that the clause was "boilerplate" language—that is, standardized language in a pre-printed form rather than language inserted pursuant to specific negotiation; (2) the fact that the other debt was not for the same purpose as the debt expressly described in the agreement; (3) the fact that the other debt was not specifically referenced in the agreement, even though it was antecedent (or at least contemporaneous) and known to the bank; and (4) the fact that the other debt was independently and fully secured by other collateral. *Stewart,* 608 So.2d 1120. Applying those factors, the *Stewart* court held that the purchase-money obligations were not included in the agreement to guarantee and secure "all other indebtedness." *Id.* at 1126. The court noted that it has "construed written instruments narrowly against the drafter when there is uncertainty or ambiguity as to the intent of the parties." *Id.* at 1125-26 (citations omitted). Conversely, it stands to reason that such construction is unnecessary when the written instruments are unambiguous. *In re Smink,* 276 B.R. 156, 166 (Bankr. N.D. Miss. 2001).

The crux of the Bank's argument is its contention that the *Stewart* factors are not substantive rules applicable to any dragnet or future advance clause, but rather are principles of construction used to determine the intent of the parties only where the clause in question is ambiguous. The Bank argues that the *Stewart* court examined the language of the agreement "to

6

determine the intent of the parties," and that if a document is "clear and unambiguous as to the collateral securing other debts [the court has] found intent to secure these debts." *Stewart,* 608 So.2d at 1126. In other words, the Bank argues that if a future advance clause is unambiguous, the intent of the parties is established by the clear language of the clause, and there is no need to resort to other principles of interpretation to determine the parties' intent. On the other hand, the Debtors suggest that the *Stewart* factors must be applied to any dragnet or future advance clause to determine whether such clause is effective to secure additional debts – either antecedent or subsequent. This Court agrees with the Bank that if the Future Advance Clause is unambiguous, there is no need for the Court to consider the *Stewart* factors. *See M & G Polymers USA, LLC v. Tackett* , --- U.S. ---, 135 S.Ct. 926, 933 (2015)("Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.").

### B. Ambiguity and the Interpretation of Dragnet Clauses

A provision is ambiguous when it "can be interpreted to have two or more reasonable meanings." *J & W Foods Corp. v. State Farm Mut. Auto. Ins.* Co., 723 So. 2d 550, 552 (Miss. 1998). If there is an ambiguity, then the court is to determine the intent of the parties "based upon what a reasonable person placed in the insured's position would have understood the terms to

7

mean." *Id.*

The court in *Stewart* found the clause in question to be ambiguous because the phrase "any and all other debts," had been interpreted in the past to include only debts similar in nature to the principal debt secured by the instrument. *Stewart,* 608 So.2d at 1126 (citing *Wong v. Beneficial Savings and Loan Association,* 56 Cal. App. 3d 286 (1976)). Similarly, courts have held that the use of the term "all debts" without specifically listing existing debts makes a clause ambiguous as to whether the antecedent debt was secured. *See, e.g., Wallace v. United Mississippi Bank*, 726 So.2d 578, 586-87 (Miss. 1998).

In *Wallace,* the court applied the *Stewart* factors in holding that certain obligations were not covered by a dragnet clause in an assignment of certificates of deposit as security. However, *Wallace,* like *Stewart* (and unlike the instant case), involved the applicability of a dragnet clause to an antecedent debt. The court applied the rule articulated in *Stewart,* and clarified its position, holding that that if a dragnet clause uses broad language purporting to cover all debts but does not list existing debt, the clause is ambiguous as to whether the antecedent debt is secured. *Wallace,* 726 So.2d at 586-87. In *Wallace,* application of the *Stewart* factors was necessary because of this ambiguity, and the fact that the antecedent debts were not listed heavily weighed against the creditor's contention that the

8

parties intended the antecedent debts to be secured by virtue of the dragnet clause. *Id.* at 587.

The *Wallace* court noted that where the antecedent debt is different from that specifically listed in the clause, "it is *less likely* that it was *intended* to be encompassed." *Id.* (emphasis added). Even still, the court made clear that the suggestion that *Stewart* established a rule that antecedent debts are not covered unless specifically identified was "an overstatement of the holding in *Stewart.*" *Id.* at 586.

## C. Enforceability of Future Advance Clauses to Secure Subsequent Debts

While *Stewart* "clearly questioned the efficacy of a dragnet clause to encompass *antecedent* debts," it also provided that "[i]t is well settled within this jurisdiction that a dragnet clause is valid to encompass *future* debts that a borrower may incur, within the security agreement." *Smink,* 276 B.R. at 160 (quoting *Stewart,* 608 So.2d at 1125)(emphasis added). After an extensive discussion regarding *Stewart* factors, and noting that that some of the factors ("boilerplate" and "different type of debt") were present, this Court nevertheless held that the future advance clause covered the debt in question because it found that the clause was unambigious. *Id.* at 157, 163, 166. The Court concluded that the clause's language—"such future and additional advances of any and all nature" and "any additional indebtedness of any and all nature"—was clear and unambiguous in covering the subsequent debt,

9

even though it was for a different purpose from the principal debt. *Id.* at 157, 166.

*Stewart* and *Wallace* both addressed the issue of antecedent debt and not future advances. The Mississippi Supreme Court addressed future advances in the *Schutze* case, which was decided after *Stewart*.[3] Without discussion of the *Stewart* factors, the court held:

> Future advance clauses are enforceable according to their tenor. . . . [W]e have repeatedly ruled, incident to a secured transaction, the debtor and secured party may contract that the lien or security interest created thereby shall secure other and future debts which the debtor may come to owe the secured party. Such clauses are treated like any other provisions in a contract and will be enforced at law subject only to conventional contract defenses, e.g., fraud, duress, and the like, none of which are present here.

*Schutze*, 607 So.2d at 56-57. The court enforced the future advance clause in *Shutze*, even though the future advances were also secured by new deeds of trust—a fact that, in the case of an antecedent debt, would have called coverage into question under *Stewart's* fourth factor. *Id.*

Similarly, in *Kelso v. McGowan,* 604 So. 2d 726 (Miss. 1992), also decided after *Stewart,* the court held that a deed of trust securing "all other Indebtedness of Debtor due to Secured Party" secured the payment of two

---

[3] *Shutze* was decided on July 29, 1992. *Stewart* was decided on April 1, 1992, although it was not released for publication until November 1992, with some modifications, after the court's denial of a motion for rehearing. Although the court in *Shutze* did not discuss the *Stewart* factors, it did cite *Stewart* for the proposition that dragnet clauses are valid and enforceable in Mississippi. *Shutze*, 607 So.2d at 59.

10

subsequent dishonored checks written by the secured party. *Id.* at 729-30. The debt arising from the dishonored checks was different in nature from the principal obligation, and thus the clause would have been ambiguous and the debt would have been in danger of exclusion from the security if *Stewart's* second factor had applied. The Bank argues that the foregoing cases show that *Stewart* and *Wallace* apply only to dragnet clauses referencing antecedent debt. It is unnecessary for the Court to decide that sweeping issue, because the cases, at a minimum, confirm that the factors are pertinent only if the clause is ambiguous regarding the inclusion of the debt at issue.

The Debtors rely on *In re Crosby,* 185 B.R. 28 (Bankr. S.D. Miss. 1993), in which the court applied *Stewart*'s analysis to a subsequent, rather than an antecedent, debt. However, the decision of the court in *Crosby* was based on the court's assumption that *Stewart* was decided after *Shutze* and represented an apparent change of position by the Mississippi Supreme Court with regard to future advance clauses. *See In re Crosby,* 185 B.R. at 32. The court in *Crosby* acknowledged the unequivocal endorsement of future advance clauses reiterated in *Shutze,* but read *Stewart* as modifying that rule to apply closer scrutiny to such clauses by applying the factors discussed therein. *Id.* The *Crosby* court applied such scrutiny to the future advance clause at issue because it assumed *Stewart* to be "the most current authority

11

on the effect of 'future advance' . . . clauses under Mississippi law." *Id.* at 33. Despite its later publication date, *Schutze* was actually decided after *Stewart* (as evidenced by its citation to *Stewart*).[4] Further, *Stewart* involved an antecedent debt and not a future advance.

Even if *Crosby* were persuasive, that court was addressing a dragnet clause featuring the same kind of vague language that was at issue in *Stewart*—"any and all other indebtedness" and "all future and additional advances"—rather than the more detailed and specific language of the Future Advance Clause. *See Crosby,* 185 B.R. at 31. Therefore, even if the court in *Crosby* was correct in applying *Stewart* to a future advance clause, it is not instructive in this case, because this Future Advance Clause is not ambiguous.

The Debtors' reliance on *Lampley v. United States,* 17 F. Supp. 2d 609 (N.D. Miss. 1998) is similarly misplaced. The plain language of the dragnet clause in that case limited its application to renewals and extensions of that specific debt only. *Id.* at 616. In this case, the Future Advance Clause specifically provides that the 2006 Deed of Trust secures all future debts of a Dr. and Mrs. Windham, or one of them acting alone, whether or not the future debt is incurred for the same purpose as the original debt.

---

[4] See n. 3, *supra.*

### D. Effect of a Grantor's Alleged Lack of Knowledge

Mrs. Windham contends that the Future Advance Clause should not apply because she was unaware of the subsequent loans, did not authorize the loans, and would not have pledged the Homestead to secure the loans had she known. This argument fails. The Mississippi Supreme Court clarified in *Iuka Guar. Bank v. Beard*, 658 So.2d 1367 (Miss. 1995), that "in the absence of allegations of fraud or ambiguities, the clause should be construed as written to cover subsequent debts created by one of the joint mortgagors individually." *Id.* at 1371 (citing *Walters v. Merchantes & Mfg. Bank*, 67 So.2d 714, 717-718 (Miss. 1953)). "There is no requirement that the co-tenants have knowledge of the existence of other debts, or each other's consent to the creation of debt and the attendant lien against the property, in order for the dragnet clause to be enforceable." *Id.* (citing *Newton County Bank v. Jones,* 299 So.2d 215, 219–20 (Miss. 1974); *Holland v. Bank of Lucedale,* 204 So.2d 875, 877 (Miss. 1967)). Thus, in *Smink*, this Court held that a deed of trust secured a subsequent debt contracted for by the grantor husband to which the co-grantor wife was not a party. 276 B.R. at 157, 160, 166. This rule applies even where the deed of trust encumbers property that is the homestead of the non-participating spouse. *Jones,* 299 So.2d at 217.

Mrs. Windham is a sophisticated business woman, who formerly owned and operated her own business. She does not claim that the Bank prevented

13

her from reading the 2006 Deed of Trust, which she admits that she signed. Under Mississippi law, parties have an obligation to read contracts that they sign. *Washington Mut. Finance Group, LLC v. Bailey*, 364 F.3d 260, 265 (5th Cir. 2004). A party may not escape liability under a contract she signed by claiming that she "did not read it or know its stipulations." *Id.* (quoting *Tel-Com Mgmt., Inc. v. Waveland Resort Inns, Inc.*, 782 So.2d 149, 153 (Miss. 2001)). Accordingly, because the Future Advance Clause is specific and unambiguous, the fact that Mrs. Windham neither knew about nor consented to the additional loans is of no moment.

### E.    CONCLUSION

In this case, the Future Advance Clause is unambiguous regarding its application to subsequently incurred obligations of a different nature or purpose. The clause expressly provides that the 2006 Deed of Trust will secure "[a]ll future advances . . . or other future obligations . . . whether or not such future advances or future obligations are incurred for any purpose that was related or unrelated to the purpose of the debt." Although the Debtors contend that the clause does not secure debt that was incurred for a purpose unrelated to the note specifically listed in the particular deed of trust, the Debtors do not identify any ambiguity in the language of the clause regarding whether or not it encompasses debts that differ in purpose from the principal debt. In fact, the language of the Future Advance Clause is specific

14

and clear, and it cannot reasonably be interpreted to exclude debt incurred for a different purpose. The Future Advance Clause is not ambiguous, and the Bank is entitled to have the document enforced according to its terms. It is therefore

**ORDERED, ADJUDGED, AND DECREED** that both the Third Note and the First Renewal Note are secured by the Homestead by virtue of the Future Advance Clause in the 2006 Deed of Trust.

##END OF ORDER##